UNITED STATES DIST. COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**

MAR - 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

AMER IQBAL

17648 Tedler Cir

Roundhill, VA 20141

VS

CASE NUMBER 1:07CV00452

JUDGE: Ricardo M. Urbina

DECK TYPE: General Civil

DATE STAMP: 03/08/2007

JURY
ACTI..

Superior Court of District of Columbia

500 Indiana Ave, N.W.

Washington D.C. 20001

Tricia Anne Riley

3800 Reservoir Rd, N.W.

Kober Cogan Hall # 101

Washington D.C. 20007

# NOTICE TO REMOVE CASE.

This notice is prayed to this court to remove this case # 2007 CA 113 & 2007 CA 113 B for following reasons:

- The petitioner received a letter dated 3/5/07 from Bradford J. Roegge on 3/5/07 to enter an order of contempt of restraining and requesting an order for imprisonment. As a result of which the petitioner filed for a protective order in this court.

- The petitioner motion for rehearing is being rejected, because he needd submitted "certificate of service", where as they are included in the attachment.

- .The request of rehearing is being rejected because of the proof of service of her, where as the attached letter is result of his mailing her the court/proceedings through a process server.

- The last two weeks, he has been transferred back and forth btw JM-170 room and JC in superior court to setup a hearing date, but was never guided or told any requirements. As a result of which, he had already filed for a rehearing in VA circuit court. All he wanted was a releasing of his matter, but its becoming more and more complex, day by day.

- The adress for Bradford J. Roegge in the transcript is only Washington D.C., where as Tricia Anne Riley appeared as Pro Se in her 01/18/07 hearing with friends. This letter has

Bradford J. Roegge's address as Rockville, MD, which is confusing.

— The most important fact is that both myself and Tricia Anne Riley were interested from very begining. In the three meetings we had in the last one year, she has always showed her interest in me. The content is stated in my letters is correct. I am a professional and educated person with no delusional history. If I address to this letter, it will result in more complications, as it has already become more complex. I believe superior court is trying to cover up on their mistakes, therefore I don't feel safe for myself and for her that any further proceedings be done in superior court.

Sincerly,

Amer Iqbal

17648 Tedler Cir

Round hill, VA 20141

Phone   571- 277- 6216

3/8/07

LAW OFFICES

# BRAULT GRAHAM, LLC
101 SOUTH WASHINGTON STREET
## ROCKVILLE, MARYLAND 20850
(301) 424-1060
FAX (301) 424-7991
BG@BRAULTGRAHAM.COM

ALBERT D. BRAULT △
LEO ALOYSIUS ROTH, JR. ◇
JAMES S. WILSON △
DANIEL L. SHEA ◆
DAVID G. MULQUIN ◇
JAMES M. BRAULT △
STUART N. HERSCHFELD △
CRYSTAL S. DEESE ◦
HEATHER J. KELLY ◆
DAVID F. RYDER △
BRADFORD J. ROEGGE ✦

◦ ADMITTED TO MD ONLY
△ ADMITTED TO MD & DC
◆ ADMITTED TO MD, DC & GA
• ADMITTED TO MD, DC & VA
✦ ADMITTED TO MD, DC & MN

ALBERT E. BRAULT
1906-2002
DENVER H. GRAHAM
1922-1987
LAURENCE T. SCOTT △
EMERITUS
———
OF COUNSEL
M. KATHLEEN FALLON
JOAN F. BRAULT
MELISSA G. BRAULT
JAMES ROBERT MILLER
1926-2003

February 27, 2007

The Honorable Lynn Leibovitz
Superior Court of the District of Columbia
500 Indiana Avenue, N.W.
Washington, D.C. 20001

Re:    Riley v. Iqbal, Civil Action No. 07 CA 113

Dear Judge Leibovitz

Enclosed please find a courtesy copy of Plaintiff's Petition for Contempt of Court in the above-referenced matter. The Temporary Restraining Order Hearing was held before Judge Robert S. Tignor. However, we have recently been informed that the matter has been assigned to your docket.

Thank you for your attention to this letter, and please contact me if you have any questions or concerns.

Very truly yours,

Bradford J. Roegge

BJR/cmb
Enclosures

cc:    Amer Iqbal

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Tricia Anne Riley,                           :
                                             :
                    Plaintiff                :          2007 CA 000113 B
                                             :
v.                                           :          Judge Lynn Leibovitz
                                             :          Next Event: None Scheduled
Amer Iqbal,                                  :
                                             :
                    Defendant                :

## PETITION FOR ORDER OF CONTEMPT

COMES NOW Plaintiff, Tricia Anne Riley, by and through the undersigned counsel, and petitions the Court for an Order of Contempt of Court against Defendant Amer Iqbal, and as grounds states the following;

1.  At a hearing on January 18, 2007, the Court issued a Temporary Restraining Order ("TRO") against Defendant upon the consent of the parties. The Order directed the following:

a.  Defendant shall stay at least one hundred (100) feet away from the Plaintiff's person, home, and work place, except that Defendant may be present at Georgetown University Hospital whenever necessary to assist with the treatment of his minor child. At such times, Defendant will stay as far away from Plaintiff as is practicably possible. See Order, Exhibit 1.

b.  Defendant shall not communicate with the Plaintiff in any manner, including but not limited to telephone, in writing, or in any other manner directly or indirectly through a third party. (Defendant shall stay away from and not communicate with Plaintiff's relatives). Id.

c.  The Order shall remain in effect until January 17, 2008. Id.

2. On January 19, 2007, the day after the hearing, Defendant requested the transcript of the TRO proceeding. See Request for Transcript, Exhibit 2.

3. On January 31, 2007 Defendant filed a Motion to Dismiss the TRO, alleging in part that he consenting to the Order under duress and without the advice of legal counsel. The Motion was rejected for failure to provide Certificate of Service upon Plaintiff. See Defendant's Motion to Dismiss, Exhibit 3; Notice of Motion Rejection, Exhibit 4.

4. On February 6 and 8, 2007, respectively, Defendant wrote two (2) letters to the Honorable Robert S. Tignor in which he alleged that the court reporter had tampered with the transcript in a variety of ways. In the February 6th letter, Defendant specifically alleged that the court reporter failed to transcribe the fact that he had been married to Plaintiff during the hearing. See Exhibit 5. In the February 8th letter, Defendant requested an emergency hearing to identify the errors in the transcript and requested tape and video recordings of the hearing. See Exhibit 6.

5. On February 15, 2007, Defendant served Plaintiff with a Motion for an Emergency Hearing to Dismiss the Temporary Restraining Order. Although he did not personally serve Plaintiff with Notice of the Emergency Hearing, he informed her in writing in a service letter that "I will be appearing in front of the Honorary Chief Judge to discuss this matter. You are also welcome to appear, if you like to participate in the discussion". See Defendant's Service of Appearance, Exhibit 7. In that letter, Defendant notified Plaintiff that the hearing would take place on February 19, 2007 at 8:00 a.m. The Emergency Hearing as requested never took place because it was never properly scheduled with the Court and because February 19, 2007 was a Federal Holiday.

6. Also in the confines of the material Defendant served upon Plaintiff were the aforementioned two (2) letters sent by Defendant to Judge Tignor.

2

7.    On February 16, 2007, Judge Tignor informed Defendant in writing that there was no discussion of marriage at the January 18th TRO hearing and denied his request for an emergency hearing. Judge Tignor also warned Defendant about the possibility of imprisonment for contempt of court if he violated the directives of the TRO. See Exhibit 8; TRO Hearing Transcript, Exhibit 9.

8.    On February 23, 2007, Plaintiff received a telephone message from the District of Columbia Marriage Bureau about a marriage license for which she had apparently applied. Plaintiff was informed that Defendant had applied for a marriage license to be married to her. See Exhibit 10 (to be sent by D.C. Marriage Bureau and filed under separate cover).

9.    By virtue of the above-mentioned acts and communications, Defendant has violated the directives of the TRO. He has communicated in writing with Plaintiff in the form of the Service of Appearance. See Exhibit 7. His constant filings with the Court, which have all been served on Plaintiff, constitute continual direct and indirect communication with and harassment of Plaintiff.

10.    Furthermore, it is clear that Defendant is a danger to Plaintiff and potentially the public at large. After briefly meeting Plaintiff at Georgetown University Hospital once in June 2006 at his son's audiology test, Defendant has repeatedly harassed Plaintiff despite all attempts to inform him not to contact her. See Personal Statement of Susan Morgan, Exhibit 11; Defendant's New Year's Card, Exhibit 12. The harassment culminated on January 5, 2007 when unbeknownst to Plaintiff, Defendant appeared at her parent's house in a bizarre effort to locate her. See Defendant's Email, January 13, 2007, Exhibit 13. Now, even after signing the Consent Order, Defendant has continued his threatening behavior by claiming that he was married to Plaintiff and actually applying for a marriage license to her. All of this activity has been directly or indirectly communicated to

3

Plaintiff in violation of the TRO.

11.     It is clear that Defendant is a grave threat to Plaintiff's personal safety.  He is

delusional and obsessed with Plaintiff and obviously cannot control himself.  He refuses to cease his

attempts to communicate with Plaintiff.  His latest attempt to obtain a marriage license to Plaintiff

is the most recent and serious form of harassment.  He must be stopped from continuing his bizarre

and threatening behavior.

12.     For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court

find Defendant in Contempt of Court.  Plaintiff requests that the Court sign a Warrant for

Defendant's immediate arrest and imprisonment during which a psychological evaluation can be

performed.  Most importantly, however, his imprisonment is necessary to prevent harm and injury

to Plaintiff.


                              Respectfully submitted,


                              BRAULT GRAHAM, P.L.L.C.


                              /s/ Bradford J. Roegge
                              Albert D. Brault (#16949)
                              Bradford J. Roegge (#457069)
                              101 South Washington Street
                              Rockville, Maryland 20850
                              301-424-1060
                              *Attorneys for Plaintiff Tricia Anne Riley*


                                   4

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of <u>February</u>, 2007, I caused a copy of the foregoing

Petition for Contempt of Court to be sent by mail, first class postage, to:

     Amer Iqbal
     17648 Tedler Circle
     Round Hill, Virginia 20141

     The Honorable Lynn Leibovitz
     Superior Court of the District of Columbia
     500 Indiana Avenue, N.W.
     Washington, D.C.  20001

and electronically filed the same with Court.

                        <u>/s/ Bradford J. Roegge</u>

**EXHIBIT 1**

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

A TRUE COPY
TEST:

_Tricia Anne Riley_
### Plaintiff

Superior Court of
the District of Columbia

vs.

C.A. No. _____

_Amer Iqbal_
### Defendant


# CONSENT ORDER


Upon consideration of the plaintiff's application for a Temporary Restraining

Order, and the record herein, and the consent of all parties, it is by the Court

this 18 day of _January_ , 2007, hereby **Ordered,** that;


~~1. Defendant shall not assault, threaten, harass, or~~ *RST*

~~physically abuse Plaintiff in any manner.~~ *RST*

**1.** Defendant shall stay at least 100 feet away from the

Plaintiff's X person, X home, X workplace, *except that Defendant may be present at Georgetown University Hospital whenever necessary to assist with the treatment of his minor child. and At such times Defendant will stay as far away from Plaintiff as is practicably possible.*

**2.** Defendant shall not contact the Plaintiff in any manner,
*(communicate with)*

including but not limited to: X telephone, X in writing,

or _X_ in any other manner either directly or indirectly,
*(Defendant shall stay away, harass and not
communicate with Plaintiff's [crossed out] + relatives')*
through a third party. *as to whether any.*

3. The court makes no findings whatsoever as to whether any
inappropriate conduct has occurred.

_Robert C. Tajara_
**JUDGE**

4. This order shall remain in effect until 1/17/08

_[signature]_
Plaintiff

_[signature]_ 1/10/07
Defendant

2

**EXHIBIT 2**

APPE    DATE: 1/1/07    CLERK: N    NON-APPEAL

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
COURT REPORTING & RECORDING DIVISION
500 INDIANA AVENUE, N.W., ROOM 5500.
WASHINGTON, D.C. 20001
PHONE NUMBER (202) 879-1009

Courtview
202 879 1090

4201

## REQUEST FOR TRANSCRIPT

NAME OF CASE: TRICIA ANNE RILEY VS AMER IQBAL  CASE NUMBER: 0CCC113-07    CA

PRESIDING JUDGE:                       REPORTER/TAPE ✓        COURTROOM: JTC

PROCEEDING DATE(S):    1/18/07                    TIME OF PROCEEDINGS: 2-3CPM

REQUESTED PORTION/BLOCK:                    WHOLE  All

NAME AND ADDRESS OF ORDERING PARTY:

First Name ___AMER___              Last Name ___IQBAL___
E-mail address: iqbalamer@hotmail.com
Company _____          Telephone Number ___571-277-6246___
Street Address ___17652 TEDLER CIR___
City ___ROUND HILL___              State ___VA___    ZIP ___20141___

*****************************************************************************

## TO BE COMPLETED BY COURT REPORTING & RECORDING DIVISION STAFF
APPROXIMATE LENGTH OF PROCEEDINGS: _____ x 40pph = Estimate of Pages _____

### COSTS ARE ESTIMATED

**TYPES OF ORDER**

| | | | PAGES | COST | DEPOSIT |
|---|---|---|---|---|---|
| REGULAR | 30 (appeal 60) calendar days | $3.30 per page x | | $ | $ |
| INTER | 15 calendar days | $3.55 per page x | 20 | $ 71 | $ 35.50 |
| EXPEDITE | 7 calendar days | $4.40 per page x | | $ | $ |
| EXPRESS | 3 calendar days | $4.65 per page x | | $ | $ |
| DAILY | 9:00 am following business day | $5.50 per page x | | $ | $ |
| COPY* | Regular or Expedite Delivery | $ .83 per page x | | $ | $ |
| 2nd COPY* | Regular or Expedite Delivery | $ .55 per page x | | $ | $ |
| COPY* | Daily Delivery | $1.10 per page x | | $ | $ |
| 2nd COPY* | Daily Delivery | $ .83 per page x | | $ | $ |
| *Paper____ ASCII____ CONDENSE PAGE____ | | | | $ | $ 35.50 |

**NOTES:**
1. You must pay for any portion of a transcript that was completed prior to your written notice of cancellation.
2. Appeal transcripts will not be filed with the Court of Appeals until payment is made in full.
3. You will be asked for a deposit of one half the estimated cost, based upon the time length of proceedings.
4. Failure to order a transcript in a timely fashion may result in the transcript not being available for your hearing date.
5. Payments to Court Reporters may be in the form of cash, money order, or check (made payable directly to the Court Reporte transcripts produced by Court Reporters. Payments for transcripts produced by the Transcription Branch can be made in Room and are to be made payable to the Clerk of the Court. Payment can be made by check (attorneys only; include bar number on the money order, or cash. Balances must be paid before picking up transcripts.
6. Transcript requests received after 4:00 p.m. are considered a transaction of the next business day.

**EXHIBIT 3**

# Superior Court of the District of Columbia

## CIVIL DIVISION

TRISHA ANNE RILEY

*Plaintiff*

vs.

AMER IQBAL

*Defendant*

RECEIVED
Civil Clerk' Office
JAN 3 1 2007
Superior Court of the
District of Columbia
Washington, D.C.

No. _07-CA-000623_

AMER IQBAL

## MOTION - (Pro-Se)

MOTION OF: _DISMISAL OF APPEAL_    for _TEMPORARY RESTRAINING ORDER_

(State briefly what you want the Court to do)

_DISMISS THE TEMPORARY RESTRAINING_
_ORDER DATED 1/18/07_

| Printed name: AMER IQBAL | Signature: |
|---|---|
| Address: 17648 TEDLER CIR, ROUND HILL VA 20141 | Home phone no. |
| | Business phone no. 571-277-6216 |

## CERTIFICATE OF SERVICE

On ___31ST OF JANUARY___, 20_06_, I mailed this motion to all the lawyers in the case, the plaintiff(s) and the defendant(s) who do not have lawyers, as listed below:

| Name: AMER IQBAL | Name: |
|---|---|
| Address: 17648 TEDLER CIR | Address: |
| ROUND HILL VA 20141 | |
| | Signature |

## POINTS AND AUTHORITIES

(Write the reasons why the Court should grant your motion and include Court rules, laws and cases, if any, that support your reasons.)

_PLEASE SEE ATTACHED MOTION OF APPEAL_

Signature

# IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

### MOTION ~~OF APPEAL~~ FOR THE DISMISSAL OF THE TEMPORARY RESTRAINING ORDER

Petitioner:                                              Case No: CA 0000113-07

Tricia Anne Riley


Defendant:

Amer Iqbal



     This Motion of Appeal/Rehearing is brought to your Court for the appeal from the decision of the Court entry of the Temporary Restraining Order dated January 18, 2007. This Motion is made for the following reasons:

1.  The Defendant was served with the papers just few hours before this hearing; that he only had time to drive in to the courthouse; that he did not have time to seek the advise of legal counsel or prepare for his defense; and he was not ready to address the complaints by the petitioner.

2.  Despite the fact that the defendant agreed to the order requested by the Petitioner, the Defendant was initially concerned that the Petitioner was either in trouble by her family or by the security and the Defendant thought that agreeing to the consent order would assist the Petitioner; the Defendant failed to have proper legal advise as to the impact of the Order on him.

3.  We both showed interest in each other the day we met. Her response was "I don't know" in the beginning but in the very few phone calls we had, I told her that I was looking for a life long relationship and her answer was Yes. Then there was continuous encouragement from her administrators for the food and the phone calls.

4.  After couple of weeks, I received a call from the security. The next day on my son's appointment, I left a message to the director of her department to clear this misunderstanding. But she didn't come or return my call. When the security arrived, I asked them for the same but they didn't cooperate in this matter. After explaining some of the situation they showed some cooperation.

5.  Few days prior to 1/5/07, I was tipped by one of the known friend about where she lives and was told that she was interested in meeting with me. I was a bit concerned but then considered it an opportunity to clear the past misunderstanding before going to North Carolina. I was cordial with the person who opened the door for me and overall he was also understanding.

6.  The Defendant was lip tight from the beginning in order to mitigate the situation in a nicely manner. I am conservative, professional and an educated person, who understands the work ethics. The reason why I have to come back was that after putting some thought I came to the conclusion that my silence was causing more harms than benefiting anyone.

7. The Defendant was also under duress about this whole situation since he was contacted by the security of the hospital. The Defendant's 2-1/2 year son goes to the same hospital for treatment and the Defendant was concerned for the welfare of his son. The Defendant did not consider the legal impact the Order may have on his attendance and to the medical needs of his son. The crew of the hospital including all doctors and nurses has been very professional and caring to his son. The Defendant does not want to have anything effect his ability to continue the hospital care of his son, in future.

Due to the Defendant being unable to timely seek legal advise or to understand the significance of the Temporary Restraining Order and its restrictive requirements; the Defendant respectfully requests an appeal/rehearing of the issuance of the Order.

Respectfully,

Amer Iqbal

~~17632~~ Tedler Cir
Roundhill, Virginia 20141

17648

**EXHIBIT 4**

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

WASHINGTON, D.C. 20001-2131

Civil Actions Branch
Clerk's Office JM-170
(202) 879-1133  (1154)

## NOTICE OF MOTION REJECTION

Date:

To: Amer Iqbal

Civil Actions Number: 07CA113

Calendar No./Judge: Calendar No. Cal #11 / J. Leibovitz

**THE ATTACHED MOTION IS HEREWITH REJECTED FOR THE FOLLOWING REASON(S):**

☐ $20.00 filing fee was not included with your motion.

☐ Non-compliance with Rule 5(e).

☑ Other: Party failed to include a certificate of service and proposed order for the judge's signature.

A copy of this *NOTICE* was sent to the Judge to whom the case is assigned, and to all of the parties listed in your certificate of service.

**A new certificate of service and a courtesy copy for the Judge (including mailing labels/envelopes) are *REQUIRED* upon re-submission of a rejected motion for filing with the clerk.**

Duane B. Delaney
Clerk of the Court

By:    Jamila Colaire
Deputy Clerk

**EXHIBIT 5**

February 6, 2007


Hon'ary Judge Robert S. Tignor
Superior Court of District of Columbia
500 Indiana Ave, N.W.
Washington D.C. 20001


Dear Sir,


I like to bring your attention to a very sensitive and important matter of "Tempering with the Court Transcripts". I believe you can understand that someone has to be very careful and sure before making this statement. I would not had sent you this letter if I was not sure more than anything about this proceeding or what I am going to state in this letter especially since its only 2 weeks old. I am sending this letter with my trust in you that you will personally look into this matter.

There are sentences, which are changed in the transcript, and an important portion of the proceeding is deleted. I was told by the court reporting desk clerk room 5500 that "she has two versions of the transcripts and she is been paid for it". I considered it as a joke but now after going through the whole transcript I am really concerned about what she said. I called her earlier to check the status on it and she told me that "she is doing it herself and slowly".

When I applied for the transcript, I asked the reporting front desk clerk, if I could get a "Tape" as I had circled the tape, but she told me, I can not. When I called her today to see if the transcripts were ready, the administrator told me to call the transcript office and gave me the contact number for Lori 202-879-1090, who didn't give me any set date or time of pickup. So I came to Courtroom by myself to check today afternoon. After couple of attempts, the court reporting desk clerk gave me the transcript. After reviewing, I went back to the 5500 Room and she was not on the front desk. Another woman came and I asked her for their Supervisor and she told me that it was "Lori Edley". She dialed the number and I mentioned her that a portion of the proceeding is not in the transcript. I also asked her that I wanted to see her but she didn't want to meet me, even when I told her that's its really important. Then she told me " to highlight the portions of the incorrect transcripts and write what was missing and she will add it". I said "You have the tape and you should know it rather than myself telling you what is incorrect or missing" and then she said she will look into this and will call me tomorrow. I don't think its appropriate for the Transcript Supervisor "Lori"?, who sounded like front desk clerk to me, to ask anyone to add /or tell her what's missing in the transcripts, because I believe it's a legal document and tempering with it is a crime. Then a male showed up for few minutes and he was also not so cooperative. This tells me that something is seriously wrong here.

In this court proceeding, besides the temporary restraining order, I was married with this woman "Tricia Anne Riley" by Your Honor. I still remember yours and mine words during the proceedings, when I first said " I want her well being and goodness" and your Honor continued with "in happiness, sickness and health, and till death to not apart" and I said I do your Honor! And then Your Honor looked at her and asked her, and then her attorney as a witness and then

looked at me and said "by District of Columbia Law you both are husband and wife, and you may kiss or hug your bride".

This above portion of the hearing is totally eliminated from the transcript. Also there are other sentences which are changed or omitted. You can imagine that this is a really serious matter for anyone, and so is for me. But seeing this so important portion eliminated and non-cooperation by the court reporter clerks worries me. I think I am in serious trouble if this issue is not addressed promptly. But I also have my full faith in Your Honor and the Judges of this country and that's why I am writing this letter to inform you of this situation. I also like your Honor to look at her attorney's name in the transcript; as for as I remember it was Brad Upshaw or Brad Upshur?

I was told by the Judge that I have 14 days to file an appeal/motion on this case. I have filed a motion for dismissal. When I called to check if there was any hearing date assigned, I was told that "The Judge is sitting on it". I was surprised to hear the words of the phone attendant. I don't mean to complain on everything but there are certain things that don't make sense to any civilized person.

I have worked in the E. Barrett Prettyman Courthouse and have assisted in building the new Annex building. The Judges in this building and also other workers know my work and me very well. You can also contact JD Court Alexandria Virginia Judges, Hon'ary Judge Nolan Dawkins and Hon'ary Judge Constance Frogale and they will also tell you about my character.

I am a very responsible person who understands the legal system, especially after working in the Courthouse for sometime. Same time, I am an ordinary citizen who likes to have his normal life and exercise his rights. I am very well aware of the implications of this letter and its consequences. But I also can not ignore what I have experienced in the past few days and especially today, which I have never experienced before. I have my faith and trust in the legal system. Especially, I am trusting Your Honor and the Clerk who were present in this proceeding. I would have never written this letter to you, if I was not sure by my heart and soul about my marriage. I believe your Honor has the authority to exercise both matters at the same time, which did happen in this proceeding.

I humbly request your Honor to immediately look into this matter and help me getting the correct transcripts. Also, I request a meeting with yourself or Hon'ary Judge Rufus G. King III to discuss this matter in person on your earliest convenience. I am hoping to hear from you soon and also hoping that this matter will be resolved soon and in an amicable manner.

Best Regards,

Amer Iqbal

17648 Tedler Cir
Roundhill, Virginia 20141
Phone 571-277-6216

**EXHIBIT 6**

February 08, 2007


Hon'ary Sr. Judge Robert S. Tignor
Superior Court of District of Columbia
500 Indiana Ave, N.W.
Washington D.C. 20001


Re: Revised Incorrect Transcript


Dear Sir,


I hope you have received my previous letter dated 02-06-2007, regarding the incorrect transcript. I was called today at 10:53 AM by an unknown number, which went to the voice mail. When I checked the message it was by Lori Edley, the court reporting administrator. She said that I can pick up the revised transcript from Room 5500 and that she was sorry for the inconvenience. Also she mentioned that the error was due to my "heavy accent".

When I went to the Room 5500, the same male showed up which I have mentioned in the previous letter. I asked him that I am here to pick up the transcript. He went back and brought the transcript with a yellow tab on the front page, signed dated by Lori. He told me that his name was "Brian" and then he laughed at me. He also said, "we are still doing you". I kept quiet and took the transcript and left.

When I reached home and reviewed it, I noted many changes "especially in the format", which doesn't make sense to me. I have attached a copy of the transcript for your review and you can compare it with the previous copy attached with my 02-06-2007 letter. Still, this is not the complete transcript and has omitted with an important portion of the proceeding, which I have mentioned in my previous letter. The expression (Indiscernible) is deleted from new transcript. New words and a big portion is added, which per Lori's message was not clear due to my heavy accent are both by myself and the Hon'orable Sr. Judge, and the plaintiff. I don't see a reason why it was not clear to her in her first attempt.

Your Ho'nor, this matter is getting really serious. Your court reporting department doesn't seem serious and are tempering with the court records. This new version clearly confirms my earlier complain.

This matter seriously worries me now, and that's the reason why I called your office today and requested your presence in the court of Hon'ary Chief Judge Rufus G. King III on Monday morning at 8:00 AM. I will appreciate if you can come and assist me in my following requests:

- I request your Hon'or to have an <u>Emergency Hearing</u> on tempering of transcript where I can identify the court reporting personal who have made these statements. I have checked the court reporting name's listing on court's web site with no name as Brian. The male who came both times appears to be of Korean Ethnicity. Some how I have a feeling that he is "James

Holland", and I can easily identify him. And I am sure now that this person is behind all the problems.

- Also, I request you to provide me with a copy of <u>"Tape Recording"</u>. If there is a <u>"Video Recording"</u> of this proceeding, I will appreciate if you will allow me to have that too. I can also provide my own transcriber to review/ confirm the recordings, if Your Honor wishes me to do that.

- I will also appreciate if you can please setup an <u>Emergency Hearing date on my Motion</u> as soon as possible, with all the previous attendants, so we can resolve this matter amicably. I have my full faith in your Honor and hoping that you will assist me with fairness in this matter.

Your Honor, my son is seriously sick and is going for a bone marrow transplant soon. I don't like to send these letters but can not ignore the errors in the court records. This whole matter is hurting my work and I have to drive for 3 hours every time I come to the court. I hope Your Honor will understand the situation and will help me in resolving it in a nice manner.

Regards,

Amer Iqbal

17648 Tedler Cir
Roundhill, Virginia 20141
Phone 571-277-6216

CC: Hon'ary Chief Judge Rufus G. King III

**EXHIBIT 7**

## SERVICE OF APPEARANCE

In the Open Court of Hon'ary Chief Judge Rufus G. King III

Superior Court of District of Columbia
500 Indiana Ave, N.W, Room 3500
Washington D.C. 20001

Time of Appearance: February 19, 2007 @ 8:00 A.M., Room 3500

Case No: 2007 CA 0000113

Tricia Anne Riley vs Amer Iqbal

I will be appearing infront of the Hon'ary Chief Judge to discuss this matter. You are also welcome to appear, if you like to participate in the discussion.

**EXHIBIT 8**

# Superior Court of the District of Columbia
## Washington. D.C. 20001

Chambers of
**Robert S. Tignor**
Senior Judge

February 16, 2007

Mr. Amer Iqbal
17648 Tedler Cir.
Roundhill VA 20141

Re: Riley v. Iqbal, 2007 CA 113

Dear Mr. Iqbal,

This is written in response to your letters of February 6, 2007 and February 8, 2007.

In your letter of February 6, 2007, you state, with reference to the hearing of January 18, 2007,

"In this court proceeding, besides the temporary restraining order, I was married with this woman 'Tricia Anne Riley' by Your Honor. I still remember yours and mine words during the proceedings, when I first said 'I want her well being and goodness' and your Honor continued with 'in happiness, sickness and health, and till death to not apart' and I said I do your Honor! And then Your Honor looked at her and asked her, and then her attorney as a witness and then looked at me and said "by District of Columbia Law you both are husband and wife, and you may kiss or hug your bride'."

Mr. Iqbal, no such words were spoken. The transcript appended to your letters accurately reflects what was said during the hearing, hence your request for an "emergency hearing on tampering of transcript" is denied.

I take this opportunity to remind you that if you violate the directives of the court's order of January 18, 2007, you would therefore be subject to imprisonment for contempt of court.

Sincerely,

Robert S. Tignor, Senior Judge

Copy:

Bradford J. Roegge, Esquire

**EXHIBIT 9**

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

```
- - - - - - - - - - - - - - x
                            :
RILEY,                      : Docket Number: 2007 CA 113
          Plaintiff.        :
                            :
     vs.                    :
                            :
IQBAL,                      :
                            :
          Defendant.        :
                            : Thursday, January 18, 2007
- - - - - - - - - - - - - - x Washington, D.C.
```

The above-entitled action came on for a hearing before the Honorable ROBERT S. TIGNOR, Senior Judge, in Courtroom Number JIC, commencing at 2:57 p.m.

APPEARANCES:

On Behalf of the Plaintiff:

BRADFORD J. ROEGGE, Esquire
Washington, D.C.

On Behalf of the Defendant:

PRO SE

07-00177

## Deposition Services, Inc.
6245 Executive Boulevard
Rockville, MD 20852
Tel: (301) 881-3344  Fax: (301) 881-3338
info@DepositionServices.com  www.DepositionServices.com

1              P R O C E E D I N G S

2              DEPUTY CLERK:  Your Honor, recalling Civil

3    Action 113-07 in the matter of Riley versus Iqbal.  Please

4    state your names for the record.  Spell your first and

5    last name.

6              THE COURT:  All right.  Ms. Riley, beginning

7    with you, ma'am, state your full name.

8              MS. RILEY:  Tricia Anne Riley.  Last name R-I-L-

9    E-Y.

10             THE COURT:  Thank you.  Yes.

11             MR. ROEGGE:  Brad Roegge, Your Honor.  I

12   represent Ms. Riley.

13             THE COURT:  And spell your last name.

14             MR. ROEGGE:  R-O-E-G-G-E.

15             THE COURT:  Thank you.  Sir, state your name

16   please.

17             MR. IQBAL:  Amer Iqbal.

18             THE COURT:  Thank you.

19             MR. IQBAL:  A-M-E-R and last name is I-Q-B-A-L.

20             THE COURT:  All right.

21             DEPUTY CLERK:  Please raise your right hand.

22        Thereupon,

23                       **TRICIA ANNE RILEY**

24   having been called as a witness for and on behalf of the

25   plaintiff, and having been first duly sworn by the Deputy

2

lt

1   Clerk, was examined and testified as follows:

2       Thereupon,

3                       **AMER IQBAL**

4   having been called as a witness for and on behalf of the

5   defendant, and having been first duly sworn by the Deputy

6   Clerk, was examined and testified as follows:

7               DEPUTY CLERK:  Thank you.

8               THE COURT:  Now, Mr. Iqbal, as I understand this

9   matter, Ms. Riley is asking for a Court Order which I

10  suppose would direct that you keep your distance from Ms.

11  Riley, that you not communicate with her in any way either

12  directly or indirectly, and that you essentially have no

13  contact or communication with her, and that you not be in

14  her presence at any time.  Is that what your client is

15  asking?

16              MR. ROEGGE:  Yes, Your Honor, as well as

17  contacting family members or anyone that Ms. Riley knows.

18              THE COURT:  I see.  Now --

19              MR. IQBAL:  May I, may I say something, sir?

20              THE COURT:  Well, let me, let me finish

21  explaining to you how this type of hearing proceeds.

22              MR. IQBAL:  Okay.

23              THE COURT:  She's asking for what's called a

24  Temporary Restraining Order.  Typically, these hearings

25  are resolved in one of two ways.  We can have a hearing at

                                                            3

1   which both parties testify.  Ms. Riley would testify and

2   you would have an opportunity to testify under oath if you

3   so desire.  At the end of the hearing, I would determine

4   whether the prerequisites for a Temporary Restraining

5   Order have been established.  And, essentially, what I

6   would have to determine is this: Is there reason to

7   believe, am I satisfied that, without a Temporary

8   Restraining Order, some type of irreparable harm would

9   occur?  And other considerations would be whether I

10  thought it was likely Ms. Riley would prevail ultimately

11  in her request for preliminary injunction whether the

12  public interest was affected or not.  But generally, I'd

13  have to determine, the most important thing would be

14  whether I thought that some type of irreparable harm might

15  occur without an order.  If I believe that that was the

16  case, then I'd issue a Temporary Restraining Order.  That

17  order would restrain you from doing certain things from

18  the things I mentioned before and it would be in effect

19  for 14 days or until the next court hearing in this case,

20  until you'd come back to court.  Now, typically, you'd

21  then come back to court in about two weeks for a further

22  hearing on the issue of a preliminary injunction.  So

23  that's one way in which we could proceed -- have a

24  hearing, Ms. Riley would testify, you would testify, I

25  would at the end either find that there was reason to

4

1  believe that some harm might occur and grant the request

2  for an order or if I was not satisfied, if I didn't think

3  there was any basis for an order, I'd simply say request

4  for a Temporary Restraining Order is denied and then it

5  would be continued for further hearing on the request for

6  preliminary injunction.  That's one way of proceeding.  On

7  the other hand, often when someone is simply asking for an

8  order saying that the other person not communicate with

9  them, don't come near them, the other person says, well,

10 if that's the way you feel, that's fine with me.  I don't

11 have any desire or intention to force my presence upon

12 you.  And so in those instances, the parties often agree

13 to the entry of an order and it would be a consent order.

14 The order would say that this doesn't include any findings

15 one way or the other as to the allegations, but it would

16 direct that the defendant is not to communicate with or go

17 near the plaintiff or her family or communicate with her

18 family.  Do you understand what I've said thus far, sir?

19        MR. IQBAL:  Yes, as far as the consent, Your

20 Honor.  Do the parties have to come to an agreement, they

21 can talk to each other and come to an agreement or will it

22 be by you, sir?

23        THE COURT:  Well, the agreement would be reached

24 right here, now.

25        MR. IQBAL:  Right.

5

1    THE COURT:  And, and what I would do is simply

2  grant a proposed order --

3    MR. IQBAL:  Mm-hmm.

4    THE COURT:  Review it with both of you and see

5  if you both agree to it.  If you agree to it, you'd sign

6  it and then I would sign it, you'd each get a copy of it,

7  and then you'd be bound by it.  Now any order that's

8  issued, whether it's by consent or whether it's after a

9  hearing, if I issue an order, the parties are bound by it.

10  So if the order directed that you stay away from the

11  plaintiff or that you not communicate with her, if you

12  violated that order, that would be cause to have you

13  imprisoned for up to 180 days for contempt of court for

14  violating the order.  Does that answer your question?  Do

15  you have any questions about it?

16    MR. IQBAL:  Yes.  I have a couple of questions

17  to ask and then I think there's a couple of things.  You

18  know, first of all, I think everybody's listening.  So I

19  don't intend you any harm or any, any problems, you know,

20  to hurt her, her family in any case or form.  As far as

21  the, I, I, that's my belief, you know?  I don't know how

22  she --

23    THE COURT:  Well, let me ask you this.

24    MR. IQBAL:  -- will proceed.  You know, right.

25    THE COURT:  Obviously, at this point, it's clear

1t

```
 1  that regardless of how innocent your intentions have been
 2  and are now, at this point, I think it's clear that she
 3  just doesn't want you to communicate with her or her
 4  family and, and she just doesn't want to have any contact
 5  with you whatsoever.  Now are you agreeable to consenting
 6  to that or do you --
 7            MR. IQBAL:  If that's what she wants, I think,
 8  you know, that my word is good enough.  I won't contact
 9  her.
10            . THE COURT:  Well, is that what your client
11  wants?  No contact?
12            MR. ROEGGE:  Well, no contact, but, obviously,
13  we'd want that in the terms of a consent form, yes.
14            THE COURT:  I understand she wants an order.
15            MR. ROEGGE:  Yes.
16            THE COURT: `That's why we're here.
17            MR. ROEGGE:  No, no contact with her, no contact
18  with her family, no calls to her work, her co-workers,
19  continued attempts to try to communicate with her.
20            THE COURT:  That's what you want, ma'am?
21            MS. RILEY:  Yes.
22            THE COURT:  There's no doubt in your mind that
23  that, that is what you want?
24            MS. RILEY:  That's correct.
25            THE COURT:  All right.  So that is what Ms.
```

7

1   Riley wants.  Do you have any objection to that?

2               MR. IQBAL:  Can you (indiscernible) on the

3   consent order how it will be shaped or implicated and the

4   timeframe?  One more thing which I'd like to ask actually.

5               THE COURT:  The timeframe is if you, in a

6   consent order would be in effect for one year.

7               MR. IQBAL:  Or upon whenever she wants to remove

8   it.

9               THE COURT:  No, once it's an order --

10              MR. IQBAL:  I believe --

11              THE COURT:  -- once it's signed by the court,

12  the only way you can remove it is to have Ms. Riley come

13  back to court and have the order rescinded.  In other

14  words, if a consent order is entered between the parties -

15              MR. IQBAL:  Right.

16              THE COURT:  -- and then a week from now the

17  parties decide they want to be friends or they want to

18  have contact, they can't do that unless and until they

19  come back to the court --

20              MR. IQBAL:  Mm-hmm.

21              THE COURT:  -- to get the order terminated or

22  vacated or rescinded.

23              MR. IQBAL:  Well --

24              THE COURT:  Once it's signed by a judge --

25              MR. IQBAL:  Mm-hmm.

lt

```
 1              THE COURT:  -- it's, it's the court's order and
 2    the court would be inclined to imprison anyone that
 3    violates the order.
 4              MR. IQBAL:  I understand, Your Honor.
 5              THE COURT:  So you should expect that if you,
 6    and her consent order will remain in effect for a year and
 7    you'll be bound by it.
 8              MR. IQBAL:  I have a question and, for Ms. Riley
 9    (indiscernible.)
10              THE COURT:  Well, you present the question to me
11    and if I think it's appropriate, I'll present it to Ms.
12    Riley.
13              MR. IQBAL:  Sure.
14              THE COURT:  What is your question?
15              MR. IQBAL:  My son is, goes into the same
16    hospital she works in and --
17              THE COURT:  How old is your son?
18              MR. IQBAL:  He's about two and a half years old.
19              THE COURT:  I see.  And so your question is?
20              MR. IQBAL:  Right now, he's going to a
21    (indiscernible) Hospital in North Carolina for treatment.
22    If he, after six months, most likely he will come back.
23    He's going for a bone marrow transplant.
24              THE COURT:  I see.
25              MR. IQBAL:  If he comes back and he needs
```

9

lt

1  treatment in the Georgetown University Hospital for the

2  hematology oncology, I hope that it's no restraint on his

3  visitation.  I believe that it's no restraint on his

4  visitation or my taking him to the hospital.

5  THE COURT:  Well, well, the order could provide

6  that you could attend and be at the hospital, but only as

7  is necessary to tend to your son.  So, of course, if you

8  need to take your son to the hospital or pick him up or to

9  visit him at the hospital, then that would be permitted,

10  but during such visit, you would still be required to stay

11  away from Ms. Riley.  So that if you happened to see her

12  in the hallway, you'd have to go the other direction.

13  MR. IQBAL:  That's fine.

14  THE COURT:  You could say nothing to her, you

15  could have no communication with her because I take it,

16  it's not necessary that Ms. Riley treat your son, is it?

17  Is that, are you anticipating that?

18  MR. IQBAL:  She's in a different department.

19  THE COURT:  I see.  So that's not an issue.

20  You're just concerned that, well, maybe I'll be taking my

21  son to the hospital or bringing him back --

22  MR. IQBAL:  Yes.

23  THE COURT:  -- and if I see Ms. Riley, if --

24  MR. IQBAL:  Yes.

25  THE COURT:  -- that happens, you simply have to,

10

1t

1    to walk in the other direction and avoid her and say

2    nothing to her.  As soon as you see her, you make a turn

3    and go the other direction.

4           MR. IQBAL:   That's fine.

5           THE COURT:   All right.  Well, what I will do is

6    draft a proposed order.  I'll review it with both of you

7    and --

8           MR. IQBAL:   I'd still like to (indiscernible) to

9    Your Honor that even during the time, (indiscernible) I

10   got a chance to read the points in this, I am not going

11   to, I don't think it would be appropriate to go into a lot

12   more detail.  A lot of it is true.

13          THE COURT:   Yes, sir.  Well, certainly if we

14   resolve this by way of consent or I'll say on the consent

15   order that the Court makes no findings whatsoever as to

16   whether or not any inappropriate conduct has occurred.   In

17   other words, I'll make it clear that the order is entered

18   solely because the parties are in agreement with the

19   consent to it.

20          MR. IQBAL:   Right, and that's basically my

21   intent too that to convey the message that I, I only want

22   her well-being or, you know, the goodness because if

23   there's a problem because of me.

24          THE COURT:   All right.  Now this is what the

25   order would say.  It would say on consideration of the

lt

1   plaintiff's application for Temporary Restraining Order
2   and the record hearing and the consent of the parties, it
3   is ordered as follows:  First, that the defendant, you,
4   Mr. Iqbal, shall stay and typically these orders say at
5   least 100 feet away from the plaintiff's person, that
6   means wherever she is and from her home and from her
7   workplace.  That's at Georgetown Hospital.  And I would
8   add language that says except that defendant may be
9   present at Georgetown University Hospital when necessary
10  to assist his two-year-old son or his son, his minor son
11  in connection with treatment at the hospital.  I would say
12  at such times though, defendant is to stay at least or as
13  far away from the plaintiff as is practically possible.
14  So that would mean that, as I said before, if you see her
15  in the hallway, you have to go in a different direction.
16  Stay as far away from her as practically possible.

17          MR. IQBAL:  Can I ask a question to you to Ms.
18  Riley that I will, I will do it anyway.  I don't think,
19  you know, we will need a Court Order for that.

20          THE COURT:  All right.  Yes, sir.  Well, I, you
21  know, I, I have no reason to doubt that, but I think at
22  this point, Ms. Riley's position is, while it may very
23  well be that your word is sufficient in this regard, for
24  her peace of mind, she wants a Court Order.  So that's,
25  that's her position.

lt

```
1          MR. IQBAL:  Well, I still believe that there's
2  no need as far as there to be a hearing.
3          THE COURT:  All right.
4          MR. IQBAL:  I believe, you know, we are on the
5  same page.  So --
6          THE COURT:  All right.
7          MR. IQBAL:  -- if she can agree to it.
8          THE COURT:  All right, fine.  Well, let me, let
9  me finish describing to you what the order would say.  You
10 have to stay at least 100 feet away from plaintiff's
11 person, home, and workplace.  And as I said, I'll add this
12 language.  All right.  Ms. Riley, Mr. Iqbal, this is what
13 the agreement would say if you were both in agreement with
14 it.  Upon consideration of the plaintiff's application for
15 a Temporary Restraining Order and the record herein and
16 the consent of the parties, it is by the court, this 18th^h
17 day of January, ordered:  One, defendant, Mr. Iqbal, shall
18 stay at least 100 feet away from the plaintiff's, that is
19 Ms. Riley's, person, home, and workplace, except that the
20 defendant may be present at Georgetown University
21 Hospital whenever necessary to assist with the treatment
22 of his minor child.  At such times, the defendant, Mr.
23 Iqbal, will stay as far away from the plaintiff as is
24 practically possible.  Two, defendant shall not contact --
25 and then I put in parenthesis, that means communicate with
```

13

1   -- the plaintiff in any manner including, but not limited

2   to, by telephone or in writing or in any other manner

3   either directly or indirectly through a third party.  And

4   in that connection, I put parenthetically, defendant is

5   not to communicate with or go within 100 feet of any

6   relative or known friend or associate of the plaintiff's.

7   So that means you can't communicate with her directly or

8   indirectly, and indirectly would mean through third

9   parties including Ms. Riley's relatives or friends or

10  associates.

11           MR. IQBAL:  Can I ask a question, Your Honor?

12           THE COURT:  Yes.

13           MR. IQBAL:  Well, I believe, you know, there's

14  some, I understand, you know, the language on the court

15  order and --

16           THE COURT:  Well, let me, let me finish, finish

17  reading and then, just jot, make a mental note of whatever

18  question you had and then I'll answer all the questions

19  you have.  All right.  Third, it says the court makes no

20  findings whatsoever as to whether any inappropriate

21  conduct has occurred.  Fourth, this order shall remain in

22  effect until January 17th, 2008.  That's a year from now.

23  All right.  So, I'm sorry, what was your question?

24           MR. IQBAL:  I just had a question that I believe

25  we have common, because my son is sick, so I communicate

14

lt

1  with the doctors.

2          THE COURT:  Mm-hmm.

3          MR. IQBAL:  I believe, you know, I will, I

4  understand the care and not have discussion about her or

5  because, but in any case, I believe that the regular talk

6  and that is any (indiscernible) or something, it's not

7  considered, you know, prohibited.

8          THE COURT:  Well, as long as you don't mention

9  Ms. Riley's name or refer to her, she is, is there any

10  reason to think that Ms. Riley will in the future be

11  involved in the treatment of your son?  Because you can --

12          MR. IQBAL:  I will, considering the nature and

13  the situation right now, I will still care if my son will

14  go to Georgetown and he has to go to her department, then

15  I will try to make some other arrangements that --

16          THE COURT:  If you can, but I mean this is in no

17  way intended to interfere with your care and assistance to

18  your son.  As long as you keep whatever you say or do

19  focused on what is necessary to help your son, then this

20  order has nothing to do with that.

21          MR. IQBAL:  That's fine.

22          THE COURT:  All right.  So it says no

23  communication directly or indirectly through third,

24  through a third party and then in parenthesis I put,

25  defendant shall stay away from and not communicate with

15

lt

1  plaintiff's friends and relatives.  Yes, sir?

2          MR. IQBAL:  Relatives is, friends means, you

3  know, that like I mean common doctors or they can also

4  come into the same (indiscernible)?

5          THE COURT:  Well, yes, but you can communicate -

6          MR. IQBAL:  I mean I don't have to, I don't have

7  to talk about her, but I believe, you know, I can have

8  some other discussion or because I have some family

9  friends, I visit them and I believe that they --

10          THE COURT:  So relatives there's no problem, but

11  friends you're concerned that perhaps someone that you

12  need to talk to at the hospital unrelated to Ms. Riley

13  might also be a friend of Ms. Riley's?

14          MR. IQBAL:  Right.

15          THE COURT:  Okay, fine.  Well, I'll cross out

16  friends.

17          MR. ROEGGE:  Or you could just say, Your Honor,

18  in an effort to communicate.

19          THE COURT:  No, I think that's a little, I'll

20  cross out friends, but I'll just say that --

21          MR. IQBAL:  I know we are going deep.  I don't

22  think, you know, there will be, like I already said, you

23  know, I don't have any --

24          THE COURT:  But, but the thing that you need to

25  keep in mind is --

16

lt

1        MR. IQBAL:  Right.

2        THE COURT:  -- that any conversation you have

3  with anyone, make sure that you don't mention or refer in

4  any way to Ms. Riley.  So I think that will be sufficient.

5  Make sure you don't do anything that might be interpreted

6  as an indirect way to communicate with Ms. Riley.

7        MR. IQBAL:  Right.  I understand.

8        THE COURT:  All right.  Now in just a moment,

9  I'll give this proposed order to each of you to review.

10 If you agree to it, there's a place for each of you to

11 sign on this form.  Now if the two of you sign it, I'll

12 sign it and it becomes an order of the court.  From that

13 moment on, until a year from now, Mr. Iqbal, you are bound

14 by it.  And if you violate it in any way, you should

15 expect that to cause you to be imprisoned for contempt of

16 court.  All right.  Do you understand what I just said,

17 Mr. Iqbal?

18       MR. IQBAL:  Yes, Your Honor, I do.

19       THE COURT:  All right.

20       MS. RILEY:  That's fine, Your Honor.

21       THE COURT:  All right.  Sign where it says

22 plaintiff.  All right.  You can give it to Mr. Roegge.  He

23 can, all right.  All right, and as much as the parties

24 agree to it, I will sign it and it now becomes an order of

25 the court.  If you'll wait outside, you'll each be given a

17

```
 1    copy of the order.  Keep that with you.  It's a very

 2    important thing for you to have for the next year.

 3              MR. IQBAL:  Is it possible, Your Honor, that it

 4    can be mailed to my home address?

 5              THE COURT:  Mailed to your --

 6              MR. IQBAL:  I can, I can pick it up, that's

 7    fine.

 8              THE COURT:  No, I prefer you just wait here.

 9    It'll just take a moment.

10              MR. IQBAL:  Okay.

11              THE COURT:  And, it'll just take a moment.  All

12    right.  As a matter of fact, Ms. Reed, if you could, if

13    you could just make copies for them right here while we

14    wait here.

15              (Thereupon, the hearing was concluded.)

16

17

18

19

20

21

22

23

24

25
```

√  Digitally signed by Lori A. Tackett

## ELECTRONIC CERTIFICATE

I, Lori A. Tackett, transcriber, do hereby certify that I have transcribed the proceedings had and the testimony adduced in the case of RILEY vs. IQBAL, Case No. CA 113-07 in said Court, on the 18th day of January 2007.

I further certify that the foregoing 18 pages constitute the official transcript of said proceedings as transcribed from audio recording to the best of my ability.

In witness whereof, I have hereto subscribed my name, this 26th day of January 2007.

*Lori A. Tackett*

Transcriber

19

Defendant's Application for Marriage License to Plaintiff
(missing, to be sent by D. C. Marriage License Bureau)

**EXHIBIT 10**

**EXHIBIT 11**

University
Hospital

*MedStar Health*

**Protective Services Department**
**Personal Statement Form**

*Tricia Riley - Audiologist*

Name: Susan Morgan, Director of Audiology
Address: 3800 Reservoir Rd NW
Washington, DC 20007
Phone #: 202-687-5136

**Personal Statement**

Mr. Iqbal Amer brought his son, Hannan, to the Audiology clinic on 6-5-06. Tricia Riley, M.A. ~ Miranda Adams, MS, tested Hannan. About 1 month later, Mr. Amer left a message for Tricia to call him. Assuming it was about Hannan's test results, Tricia called him at which time Mr. Amer asked Tricia out on a date. Tricia told him no, that she had a boyfriend and did not want to go out with him. The next day, Mr. Amer left a message for Tricia saying that he would stop by the clinic the following day. Tricia called him the next day & spoke with him directly & told him not to come see her at the clinic. She also told him that she did not want any personal contact with him. Over the next 6 weeks Mr. Amer left approximately 4-6 voice mail messages for Tricia requesting meetings for coffee or lunch & for Tricia to call him back. Tricia did not respond to any of these messages. Also, Mr. Amer faxed an invitation to our clinic inviting Tricia & Miranda to a dinner at a restaurant on Aug 12th. We also believe several of the Lombardi Cancer Center physicians were also invited to the same dinner. Our administrative officer contacted Mr. Amer & told him that Tricia & Miranda would not come to dinner. Mr. Amer also went to Tricia's house. [illegible] August 14th Mr. Amer came to the clinic to see Tricia & requested to wait in the waiting room to see her. I spoke to Mr. Amer & asked if his visit was about his son's testing & he said not that he was hoping to see Tricia. I asked him to leave the clinic & he did. Aug 15, Mr. Amer invited the entire staff to a lunch →OVER

Signature: *[signature]*   *[signature]*
Date: 9/29/06       9-29-06

clinic. On Aug 25th Mr Amer dropped off, for the clinic, a cake & chocolate candy. The following week he dropped off chips & salsa & waited for 1 hr. in the waiting room to see Tricia. It was the end of the day & the clinic was closing so he left. On Sept 5th Mr. Amer dropped off breakfast for the audiology staff. I contacted Greg Coronada on Sept 6th & discussed the events & Mr Amer's behavior. Greg & I called Mr. Amer on Sept 6th & told him to stop contacting Tricia & to only contact the audiology clinic for professional matters & that we would not accept any more food from him. We also told him that if his son needed further audiology services then he would see a different audiologist other than Tricia. On Sept 26th Janice Oppenheim contacted Tricia to inform her that Mr. Amer had placed numerous requests to Janice's staff to "put in a good word for him" with Tricia. [Janice also said,] He also sent Dr. Slad a letter requesting that she contact Tricia about dating Mr. Amer & he sent diamond earrings to Dr. Slad to give to Tricia. About 4:30pm Sept 26th John Berbotti, Janice Oppenheim, Greg Coronada & I called Mr. Amer & John told him that he was not to directly or indirectly try to contact Tricia. He was also told that if he did not comply, we would contact the DC Metro police. Mr. Amer stated that he understood, & that we would not hear from him again. On Sept 29th, Mr. Amer left a message on my voicemail requesting that I meet with him & allow him to explain because he thought I was given mis-information. I contacted Greg Coronada & protective services was called by someone in Lombardi because Mr. Amer was in the Lombardi clinic for an appointment with his son asking for help in contacting Tricia.

**EXHIBIT 12**



A happy heart,
a sunny smile,
joys to make
each day worthwhile,
All that you'd like most,
and more –
That's what this
New Year wish is for!

My deer, the moment I first saw you
though I stayed silent
and when I saw your heart, and you knew
You took, mine away
Since that day onwards
It only beats with your name

And the day you came, put your pad down
and nod . . .
I only see you wherever I look,
Staying away from you, hurts a lot
and I only wish you and me together
and for forever
Come soon if you can, or wait and I will

**EXHIBIT 13**

**From:** amer iqbal
**To:** rileytricia@yahoo.com
**Date:** Saturday, January 13, 2007 4:52:27 AM
**Subject:** amer trying to contact you

Tricia,

Hope you are doing good. I happened to find your email
address and thought to write you directly. Whatever
happened at the hospital was totally a
misunderstanding and I like to clear it up with you. I
believe I have met with your sis Kim and other
relative, and you know it too. I was waiting for you
to return my call but you didnt? if there is a reason
then you should let me know.
I want to tell you that I like you vmuch and I believe
its the same on ur side and we should talk to
eachother.
I am taking my son to NC for his transplant, but will
be in the area. email is good to start communicating
with eachother, so please write me back.
takecare
Amer

---

Do You Yahoo!?
Tired of spam?  Yahoo! Mail has the best spam protection around
http://mail.yahoo.com

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| Tricia Anne Riley, | : | |
| | : | |
| Plaintiff | : | 2007 CA 000113 B |
| | : | |
| v. | : | Judge Lynn Leibovitz |
| | : | Next Event: None Scheduled |
| Amer Iqbal, | : | |
| | : | |
| Defendant | : | |

<u>ORDER</u>

UPON CONSIDERATION of Plaintiff's Petition for Contempt of Court, and the record

herein, it is by the Court this ____ day of _____, 2007, hereby

ORDERED, that  Defendant has violated the directives of the Temporary Restraining

Order, dated January 18, 2007, and therefore is in Contempt of Court; and

ORDERED, that a Warrant shall be issued for Defendant's immediate arrest and

imprisonment.


_____

JUDGE, SUPERIOR COURT FOR THE
DISTRICT OF COLUMBIA


COPIES TO:

Bradford J. Roegge
Brault Graham P.L.L.C.
101 South Washington Street
Rockville, Maryland 20850

Amer Iqbal
17648 Tedler Circle
Round Hill, Virginia 20141

# CIVIL COVER SHEET

07-452
RMU

## I (a) PLAINTIFFS

AMER IQBAL

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88 888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**DEFENDANTS** DC SUPERIOR COURT, WASH DC
TRICIA A. NE. RILEY   500 INDIANA AVE
3800 RESERVOIR RD NW   WASH DC 20001
WASH DC 20007

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

CASE NUMBER  1:07CV00452

JUDGE: Ricardo M. Urbina

DECK TYPE: General Civil

DATE STAMP: 03/08/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZEN
FOR PLAINTIF

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV CASE ASSIGNMENT AND NATURE OF SUIT

ents your cause of action and one in a corresponding Nature of Suit)

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff))
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

Court Name: District of Columbia
Division: 1
Receipt Number: 4615002760
Cashier ID: aluddi
Transaction Date: 03/08/2007
Payer Name: Unknown
------------------------------
CIVIL FILING FEE
For: Unknown
Amount:       $350.00
------------------------------
CASH
Amt Tendered: $360.00
------------------------------
Total Due:      $350.00
Total Tendered: $360.00
Change Amt:     $10.00

Case#07-0452

Only when the bank clears the
check, money order, or verifies
credit of funds, is the fee or debt
officially paid or discharged.  A
$45 fee will be charged for a
returned check.

365 Property Damage Product Liability

eneral Civil

| Forfeiture/Penalty | |
|---|---|
| ☐ 610 Agriculture | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| ☐ 620 Other Food & Drug | ☐ 480 Consumer Credit |
| ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 490 Cable/Satellite TV |
| ☐ 630 Liquor Laws | ☐ 810 Selective Service |
| ☐ 640 RR & Truck | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 650 Airline Regs | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 660 Occupational Safety/Health | ☐ 900 Appeal of fee determination under equal access to Justice |
| ☐ 690 Other | ☐ 950 Constitutionality of State Statutes |
| | ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

C 158
USC 157

Other

ion

☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (If not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (If Voting<br>Rights Act) |

**V. ORIGIN**

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

*Notice To Remove DC Superior Court Case# 2007CA113 & 2A113B*

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS    ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint **JURY DEMAND:** ☒ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☒ YES ☐ NO   If yes, please complete related case form. *07-0408 RMU*

**DATE** 3/8/07    **SIGNATURE OF ATTORNEY OF RECORD** *[signature]* Pro SE

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.